UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: TENNESSEE SEX OFFENDER REGISTRY ) No. 3:26-cv-00300

BEFORE THE HONORABLE

WILLIAM L. CAMPBELL, JR., CHIEF DISTRICT JUDGE

TRANSCRIPT OF PROCEEDINGS

April 14, 2026

Patricia A. Jennings, RMR, CRR
Official Court Reporter
719 Church Street, Suite 2300
Nashville, TN 37203
patty_jennings@tnmd.uscourts.gov

APPEARANCES:

For the Plaintiffs:

Edward M. Yarbrough
Bone, McAllester & Norton, PLLC
511 Union Street
Suite 1000
Nashville, TN 37219

Walter Justin Adams
Jonathan P. Farmer
Spencer Fane LLP
511 Union Street
Nashville, TN 37219

Kyle F. Mothershead
Aaron Kiefer Rothbaum
Relentless Advocacy, PLLC
7000 Executive Center Drive
Suite 240
Brentwood, TN 37027

John B. Nisbet, III
Law Office of John B. Nisbet III
PO Box 266
Cookeville, TN 38503

David J. McKenzie
Law Offices of David J. McKenzie
205 West Commerce Street
Lewisburg, TN 37091

Matthew D. Wilson
The Law Office of Matthew Wilson
2204 W. Main Street
Tupelo, MS 38801

Jerry Gonzalez
Law Office of Jerry Gonzalez
8000 Highway 99
#456
Rockvale, TN 37153-9998

Davis Fordham Griffin
Northstar Litigation, PC
209 10th Avenue South
Suite 560
Nashville, TN 37203

APPEARANCES CONT.:

Brandon E. White
Law Office of Brandon E. White
39 Public Square
Suite 1
Columbia, TN 38401

David R. Esquivel
Bass, Berry & Sims PLC
21 Platform Way South
Suite 3500
Nashville, TN 37203

Ryan C. Davis
Ryan C. Davis Law, PLLC
1224 2nd Avenue South
Suite 102
Nashville, TN 37210

For the Defendant: Cody N. Brandon
Office of the Attorney General and Reporter
500 Dr. Martin Luther King Jr. Blvd.
Nashville, TN 37202

Gabriel Joseph Krimm
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202-0207

The above-styled cause came to be heard on April 14, 2026, at 1:30 p.m., before the Honorable William L. Campbell, Jr., Chief District Judge, when the following proceedings were had, to-wit:

THE COURT: All right. Good afternoon. Welcome to everyone. I don't know whether this is a hearing or a Bar Association meeting, but either way, glad you could make it and appreciate you taking time out of your busy schedules to come here today.

I know we've got just a few people at the tables and other people who are involved who aren't sitting at the tables. So let me just go through, have everybody introduce yourself. You don't need to say which cases you have because I know some of you-all have many of them. But why don't we start with Mr. Yarbrough and just introduce yourselves for the record.

MR. YARBROUGH: Yes, Your Honor. Ed Yarbrough of the Davidson County Bar, and I have Mr. Adams, Justin Adams, here and Mr. Farmer for our cases. We find ourselves one foot in the Sixth Circuit, one foot in the District Court, but we're confident Your Honor can straighten that out.

THE COURT: Well, we'll see. Go ahead. Mr. Mothershead.

MR. MOTHERSHEAD: Kyle Mothershead, and I have Mr. Aaron Rothbaum here with me on our cases.

THE COURT: Okay.

MR. NISBET: John Nisbet of the Putnam County Bar.

THE COURT: All right. Welcome. Who else do we have back there?

MR. McKENZIE: David McKenzie and Matt Wilson here.

THE COURT: All right.

MR. GONZALEZ: Jerry Gonzalez.

MR. GRIFFIN: Davis Griffin, Your Honor.

MR. WHITE: Brandon White of the Maury County Bar.

MR. ESQUIVEL: Good morning, Your Honor. David Esquivel.

MR. DAVIS: Ryan Davis.

THE COURT: Anyone else on that side? Everybody else is just here watching. All right. And then I know we've got a number of people from the AG's office, but you all have been voluntold that you're going to be speaking, I guess. So go ahead.

MR. BRANDON: Good afternoon, Your Honor. Cody Brandon from the AG's office. I'm joined by my colleague Gabe Krimm and a number of my other colleagues from the

office. I'm happy to have them introduce themselves to the Court if you would like.

THE COURT: That's okay. It's quite a few. But appreciate everybody being here.

All right. So I wanted to -- as you-all I'm sure know by now, we had all of, what we call, the SORA cases transferred to me, with a couple of outliers, and the thinking was to try to find ways to find common issues, move these cases along. I recognize, as Mr. Yarbrough already mentioned, we've got a case that's on appeal that may impact some of our plans, but all we can do is try to get these cases moving in a logical way. We have over a hundred of them. So we've got a lot of work to do. The goal is to try to find some commonality, perhaps ways we can gain efficiencies and move the cases forward where they have common issues, and many of them do.

As you I'm sure know by now, we've created a master case that will be used for communication to all of the cases at once. It will be a one-way street as far as communications. You-all won't be filing anything in that case. It's merely a way for us to communicate with all the different attorneys in the cases at once. Any case-specific things will obviously be docketed in that case. So hopefully that will work well.

I think we have all the lawyers who should be receiving those notices in the master case. If you know of somebody that you've talked to and they didn't get that, please notify my chambers, and we'll try to get those lawyers added so that we can make sure everybody's getting all those communications. We're going to also do an order in the cases that will kind of explain some of this, what to do in the individual cases, what to do in the master case. So hopefully it will be clear. And if it's not, we can try to clarify that.

These cases, many of them, have been going on for a number of years, and they're in quite a few types of postures procedurally. Some of them are stayed. Some of them are administratively closed. Some of them are active. Some of them are on appeal. And one of the goals that I have is to try to get them at least more online with each other as we move forward. So that's what we'll talk about here in a moment.

I'm curious to know what the attorneys think might be the scope of discovery in these cases, if we think there's going to be a lot of discovery to be taken. If so, what the duration might be. I mean, we're not quite to case management detail, but I'm curious if you thought -- or if these cases will just be decided on facts as they're known in the public record and the law.

Anybody from the plaintiffs' side want to chime in on what they think discovery may -- if there should be discovery, and if so, how much will be involved?

MR. MOTHERSHEAD: Your Honor, Kyle Mothershead. You know, I served a discovery request in one of the cases earlier this year that was kind of tailored around a pending preliminary injunction, and I think -- I think it's a good way of -- at least a good starting point. You know, I mean, we're talking about the classification issue. And so there's, you know, I think policies and records and communications that are going to go to, you know, does the TBI have an active role in classifying offenders and conveying those classifications to other law enforcement agencies and enforcing, you know, those classification provisions.

And then there are -- you know, if you look at Judge Trauger's ruling in Does 1 through 8, you know, the kind of geographical provisions and the TBI's role in kind of collateral enforcement of those by way of, you know, direction and communication with other law enforcement agencies, you know, same thing. There's going to be policy and communications and documents around that.

I do think there's definitely a space for depositions in all of this, you know, and then, of

course, in some cases there is a conspiracy claim that several of my clients have filed, certainly discovery for that in terms of, you know, the hands-on involvement of the TBI in actual arrests or compliance operations. Quite a lot of discovery to be taken.

But, you know as far as just kind of getting to that initial -- you know, of course, many -- many plaintiffs have preliminary injunctions, but there's some of the more recent ones that have sought a kind of more limited version of the injunction, that, you know, essentially what Judge Trauger granted. You know, I think there -- there's a space for discovery on that just to kind of focus in again on the TBI's role and the classification enforcement.

THE COURT: If -- because that's one of the issues up on appeal, right, is whether the TBI is a proper party?

MR. ADAMS: Yes, Your Honor. That's correct.

THE COURT: So if the Sixth Circuit agrees with what Judge Trauger ruled, and those cases are now in front of me, then do you think you'll still need all that discovery you just described, or is that just one piece of it?

MR. MOTHERSHEAD: I guess it depends what the ruling looks like, I mean.

THE COURT: Yeah.

MR. MOTHERSHEAD: And we don't know when it's coming, and, you know, there are people whose from our standpoint rights are being violated every day --

THE COURT: Right.

MR. MOTHERSHEAD: -- by this issue. So we're not keen to just punt it off, you know, for those folks.

THE COURT: Understood. All right. Anybody else see -- among the attorneys representing the plaintiffs in these cases, anybody else see it differently as far as discovery than from what Mr. Mothershead just described?

Are there any other categories that anybody thinks that would be ripe for discovery beyond what he described? No? Okay.

Assuming that we do have some amount of discovery to conduct in these cases, that presents another issue, which is putting all the cases in front of one magistrate judge for commonality on case management. I'm not real keen to do that because, as you-all I'm sure know, they have plenty to do. So one option that I'm exploring -- I want to put it on the table and just let people respond if you want to -- is the idea of appointing a special master to oversee case management in these cases, sort of a concierge magistrate judge, if you

will, that could make sure that the cases and the discovery issues that may arise get prompt attention.

My concern is that because these are not consolidated cases there could be varying views between the lawyers who represent the plaintiffs on what discovery is needed, and a magistrate judge -- things, I think, can start falling through the cracks. So that's an idea that I'm exploring and considering very seriously, but before I go any further on that, anyone have any strong feelings one way or the other about the idea of appointment of a special master?

MR. YARBROUGH: Your Honor, I wasn't planning to speak, but since that's come up, my personal experience with special masters in cases as complex as this is that it doesn't really speed things up. It just adds another layer of decision-making, and obviously anything that person does would be appealable to Your Honor or possibly to a magistrate. And it has a tendency in my experience to slow things down, rather than speed them up. That's just a general observation. It could be that you pick the right person, it would be wonderful. I don't know.

THE COURT: All right. Thanks. Anybody else have any thoughts on the idea of a special master?

Yes, sir.

MR. BRANDON: If I could, Your Honor. I don't think the defendants would have any opposition to a special master in principle. I do think, if I could address discovery more broadly, just it may be early to really wade into that. As Mr. Mothershead's response and the Court's questions reflect, there's a lot about scope of discovery and whether discovery is necessary that I think is going to be dependent on a few events that haven't occurred yet, one of them being the Sixth Circuit's decision and propriety of Director Rausch as a party for specific relief and, you know, possibly settling the merits issues there at least in that case.

And following the Sixth Circuit's decision, we'd also anticipate that there may be more amendments to complaints coming. We know some of these cases have had amended complaints post the first Sixth Circuit's decision. That may further diversify the issues for discovery in terms of what defendants it's being taken from, what provisions are being challenged, and discovery is going to be tailored to those revisions.

As the plaintiffs' side and the Court might expect, the, you know, defense is probably going to take the position that a lot of those are just legal relationships defined by statute, that there's not a lot of defense side discovery that needs to be taken. I

wouldn't be surprised if plaintiffs dispute that and want to press it otherwise.

One commonality between discovery that we can anticipate being presented is the standing and the connection of the plaintiffs to the specific provisions that they challenge. I'll note, for example, in the Western District, where cases proceeded to summary judgment, there plaintiff challenged the sex offender registration, sex offender restrictions, went in on a complaint that looks a lot like some of the complaints that the Middle District has seen. Summary judgment record, after discovery, has shown that the sex offender statutes themselves are not actually restricting that plaintiff in any way. It's his community supervision for life sentence. Completely different issue. That has really shaped summary judgment briefing to be evidence not at all about the SOR statutes, but about something entirely separate.

So a special master might be very helpful when we get to the point after the Sixth Circuit's decision, after amended complaints, and we'd pause it after motions to dismiss have shaped those amended complaints to coordinate discovery between all these cases.

An alternative that the State thinks would be an efficient use of the Court's resources, and especially

thinking about magistrate judges' times and the Court's time, would be to advance these cases using test cases. So far, Does 1 through 9 has really been our test case. It's run out in front of the other cases and been a further-developed record. It got to summary judgment, got to an appeal, the remand. Depending on the outcome of the Sixth Circuit's opinion, the Does 1 through 9 case may have run its course. And at that point, it might be a good opportunity to choose a new test case or test cases to advance some of the leading issues in these cases in a way that the District Court can address them, tee up opportunities for the Sixth Circuit to resolve issues in those cases that might be applicable to many other cases, but do it in a way that minimizes the burden for the Court, minimizes the discovery burden on all the parties involved, and keeps advancing the litigation forward.

THE COURT: Well, you've touched on two topics that I'm about to get to. So why don't we talk about one of those first. It sounds to me like there's likely going to be some measure of discovery that was going to be needed. So we'll figure out what to do on that. But I appreciate your input.

MR. NISBET: Judge --

THE COURT: Yeah. Mr. Nisbet.

MR. NISBET: Thank you, Judge. When we brought up amended complaints, it came to my mind. After the Sixth Circuit -- my reading of the Sixth Circuit case and the AG's continuing dispute of TBI Director Rausch's involvement in the process, I amended several complaints in the brief time after the Sixth Circuit opinion to add the DA in each county where my clients lived, and there have been some other of the plaintiffs bar I think that have sued sheriff's departments and maybe even police departments -- in my mind, it's who my clients report to -- to kind of settle this issue of who actually is involved with enforcement of the Sex Offender Registry.

And in those amended complaints, if we head that way in all the cases, there's going to be a fair amount of discovery to talk to the sheriff of each county and say what's your involvement in this, who have you appointed to be the reporting person, and those kind of things.

THE COURT: Okay. No, I appreciate that.

MR. NISBET: If that amended complaint plays out like that.

THE COURT: Well, I'm going to get to amended complaints in a moment because I think we've got a path forward on that.

All right. Our reading of the complaints,

there's a wide variety in -- or variations in the detail of the complaints in the cases, some of which very generally challenge the registry laws as they've been amended, some of which are very specific. And in order to understand -- like your idea of a test case, for example, right now I'm not sure we would be able to really bucket these very well based on the current status of the pleadings and what we know the cases to be about and all we have is the pleadings.

So what we're planning to do is have the plaintiffs submit to the Court a questionnaire, responses to a questionnaire. And I'm going to give you those in a moment, give you a chance to look at them and chime in with any thoughts you have. Just to be clear, this will be something that will just be submitted for my chambers to look at. The AG's office won't get a copy of this.

The point of this is to put as fine a point as we can on what particular provisions and when they were enacted are being challenged by each individual defendant. That would help us with the idea of what we're kind of calling bucketing these cases based on the issues in them, perhaps even identifying some test cases, but do so in an efficient way, back to Mr. Mothershead's points about, you know, his -- you know, from his position, his clients' rights are violated every day. So

we want to try to keep things moving.

But the questionnaire, as I said, will be to gather information to organize these cases based on what emerges from the data that we see. Hopefully, there will be some things that will provide that to us. And, obviously, you can just fill it out to the best of your ability.

A couple of thoughts on these questionnaires, and then what we can do is take a short break, and we'll hand out to the plaintiffs' lawyers a copy so you can take a look at them. Because before we finalize them, if there's something we just missed, I'd love to hear about it so that we can not have to redo this. Again, this is just going to come to my staff. It's not going to be -- it's not going to be a pleading. It's not going to be anything other than just information that we can use to understand what the cases are particularly about.

And what we're trying to understand from this is specific dates that a particular plaintiff -- that are going to be material to the analysis for that particular plaintiff, particular provisions that are challenged when they were enacted, so forth, so that we can start to put these in some semblance of order. Again, as I said, we've got over a hundred of these cases. So anything we can do to identify them would be helpful.

The one thing I'll tell you about these before we give you copies and take a short break is the way these are done, according to my brain trust -- and they tell me how these things work because it's technology that I don't really understand. But once you fill it out and submit it, you can't go back and change it, so -- but you can print it off, and you can, you know, write it in or do whatever you want, and then when you feel like you got the right answers, then you can submit it.

I recognize that there may be some information that you need that you may not necessarily have access to. I can imagine if you're not quite sure about a particular date of conviction or a particular fact that we're asking you to provide, the Attorney General's Office may very well have access to that data in their databases. So my direction to the AG's attorneys involved in the cases is be willing to be collaborative with particular plaintiffs' attorneys in their cases so that if they say, "Hey, we've looked and this is what we're trying to figure out to answer this questionnaire, can you figure that out," you may have a database that you can look at to help them out. It may not happen, but I want you-all to be willing to do that, with the end game being I get the best information I can get from these guys on that side of the room.

The other thing I want to be clear about is, we're asking for very specific identification of statutes, and I know there may be a little bit of a concern there that, well, we don't want to necessarily bite down on one particular thing if we realize through discovery or whatever that there may be another provision that's really at issue. This is not designed to box you in. It's designed for us to get information. We're going to talk about amended complaints in a minute, and that's where this will come back up as well.

I'm going to have one of my law clerks give to the guys on this side of the room, just probably one per team, a copy of this questionnaire, and we'll take about 10 minutes. Just look through it. What you will see is a lot of them -- we've allowed for if there's multiple offense information, multiple offense, the date of offense, date of conviction. And so if it's only one, then most of this questionnaire, you know, will not need to be completed. You can just put "Not applicable."

But take a look at this, and when I come back in, welcome any thoughts you have on whether there's other information that you think would be helpful. You-all are living in the weeds of these cases a lot more than I am, and so you may identify some things that would help us with the end game that I've described.

So with that, why don't we take a short break, and we'll hand these out, and we'll come back together.

(Recess taken from 1:55 p.m. to 2:12 p.m.)

THE COURT: All right. Any feedback on the draft of the questionnaire that we've provided?

MR. MOTHERSHEAD: You know, compliments to the brain trust. It is very comprehensive.

THE COURT: I can guarantee you I didn't draft it.

MR. MOTHERSHEAD: The one thing that we did come up with that seemed important that doesn't seem to be on there is just asking about plaintiffs' classifications, the registry classifications.

THE COURT: Okay.

MR. MOTHERSHEAD: There is -- sorry, I didn't mark that question number -- a question that could be a little bit hard to answer potentially without discovery, which is the date registration started. Sometimes if that's 20 years ago, the plaintiff could be a little fuzzy about it. So that just may call for us to do our best or need the TBI to provide.

THE COURT: Right, which was my encouragement to them. If you-all are trying to do that, and it's something within their knowledge, then have a conversation and figure out if they can get that to you.

I mean, it's out there, just you may not know the specific date.

MR. NISBET: And to piggyback on the classification, the registry now no longer has if a -- if a registrant is classified as violent or sexual. They've removed -- when I started doing this, it was on there. They removed it about a year ago is my best guess. Don't hold me to that recollection. And so we'll need some help from the TBI to know how these people are classified. I think offenses against children are still on there in red. So we can figure that one out.

THE COURT: Okay.

MR. NISBET: But the other two, we're shooting in the dark.

MR. MOTHERSHEAD: The other thing is question 38, one of the checked boxes is -- this is about enforcement and registration agencies. As far as we can think of, we don't think there's -- you know, it's not like Highway Patrol -- there's no other state law enforcement, other than TDOC and TBI, we don't think. I don't know if the AG's office has a different take on that. But maybe that's just an unnecessary box, doesn't really matter that much.

MR. NISBET: I've got people go to the sheriff's office or to the --

MR. MOTHERSHEAD: But those are county --

MR. NISBET: Or the -- I got Crossville that go to the city police department.

MR. MOTHERSHEAD: Well, that's the city.

THE COURT: You're saying how it -- the only two that would fit into that category would be TBI and Highway Patrol?

MR. MOTHERSHEAD: Yeah, exactly. I mean, yeah, it's just -- I mean, it's no big deal, but it's just maybe a redundant box because we have TBI and TDOC have their own boxes, counties have their box, city has their box. You know, then just on this -- one last thing is, you know, there's reporting and then there's enforcement, and, you know, many of us have alleged that the US Marshals are involved in compliance. I don't know if that necessarily needs to be on this form. I'm not sure what the Court's using this form for, but just if we're answering this question about enforcement, you know, we would say the US Marshals are sometimes involved in enforcement.

THE COURT: Okay. That would probably be under "Other"? Okay.

MR. BRANDON: Your Honor, if I could --

THE COURT: Yeah.

MR. BRANDON: -- we do have a little concern

with the information being submitted ex-parte to the Court. We think the defendants could actually be helpful. If the information from the questionnaires is going to be used in making determinations about material similarities between the cases or whatnot, we think we ought to have the opportunity to contribute to those discussions. We also do have some concerns about information. If it's not in a complaint yet, but that's being submitted by questionnaire that would govern a case beyond what's in the complaint in that we don't have, you know -- we might have access to the information in terms of at our fingertips in the larger sense, but not knowing what information is being submitted to the Court that might govern the direction of the case, it could just be helpful for us to be party to those.

As I read it, I could be wrong, plaintiffs may correct me, but I didn't see any questions of a nature on here that would be problematic for us to have access to that information or perhaps even collaborate on that.

And that just to be helpful, Mr. Mothershead's point on the question about state law enforcement agencies, I do think Mr. Mothershead has sued the Attorney General on a number of cases. Maybe it is the case that he doesn't enforce the Sex Offender Registry statutes, but somewhat like the Attorney General would

fall in the category of state officials.

THE COURT: I didn't think he was talking about the TWRA or anything like that.

MR. MOTHERSHEAD: I guess it would be, you know, in the same bucket as US Marshals, where nobody's reporting to the Attorney Generals, but there's an alleged role in enforcement.

THE COURT: Understood. What -- yes, Mr. Gonzalez?

MR. GONZALEZ: Your Honor, on No. 8, you ask about the underlying conviction and then the state and county. My client was convicted under federal law. So I would put federal on that.

THE COURT: Okay.

MR. GONZALEZ: I think the same would apply to 31: If answer to 30 was yes, provide the offense date, et cetera, state and county. Federal --

THE COURT: If you just put Middle District of Tennessee, if that's the applicable jurisdiction, then that's fine. Most of these are -- we're kind of shooting for the common scenarios.

Anybody else have any -- yes, sir?

MR. GRIFFIN: Yes, Your Honor. If the goal is to help identify potential commonalities, it might be helpful to ask or have a place to indicate the claims in

the complaint. To speak for myself, there's no ex post facto claim, but much of the information seems to be contemplating ex post facto claims. I don't know if that might assist the Court in filtering the cases to know the...

THE COURT: Well, you both have anticipated one of my next talking points, which is this questionnaire is designed to, as I said earlier, gather information. I understand that especially some of the gentlemen at the table have multiple plaintiffs. Unfortunately, you're going to have to fill one of these out for all of them for this to be effective. But we're planning on giving you -- and we'll revise some of these with some of this input, it's very helpful, but we'll plan on setting an eight-week window to complete these once the link goes to you. It will be a link, and you'll click on it, I'm told. And that should give people time to whittle away, especially folks who have multiple cases.

As far as -- then the next step would be -- in that interim, our plan is to administratively close all the cases just so that we can have the focus be on getting this information to us. Then after that window has closed, the plan is to have the plaintiffs file amended complaints in light of the information that you've provided here. And that goes back to my point

earlier. This questionnaire is not designed to box you in on a particular legal theory. It's to, again, identify commonalities. And I recognize that -- and it's not a pleading. But I recognize in a pleading you may have some broader language in there that, you know, through the scope of discovery or something that changes for your client, all of a sudden a new provision is in play that you want to address and attack.

So the amended complaint is not purely designed to box you in. It's more designed to help us identify which particular statute, and when it was passed, is being challenged so that we can identify what common issues there might be across cases. It may be a group of 10, it may be a group of 80. We just don't know until we have that information. What we're going to have everybody do is just file an amended complaint that puts everybody at the same starting line as far as where the case is and what the operative pleading is.

Let's get back to -- I'm not sure if that addresses your concern about that there may be things happening that are based on the questionnaire that could move into an ex-parte sort of dynamic. That's what I'm trying to avoid through the amended complaint.

MR. BRANDON: Yes, Your Honor. I appreciate that. I guess being in a position of not knowing exactly

what -- we appreciate being able to look over the questions. Not knowing what exactly the responses of the plaintiffs will be and what the content of those communications are, as well as -- and this may be forthcoming in the discussion, but how the responses to questionnaires are going to actually affect the management of the cases going forward, besides that hopefully they'll inform the amended complaints.

But just looking over the questionnaire, again I'll reiterate, it didn't seem that there was any information to be provided there that would be problematic for the defendants to see, and that it would be better off to have us participate in that process in terms of helping -- helping the Court find commonality or materiality of different issues between the cases, collaborate with the plaintiffs there.

THE COURT: And I may have been anticipating a concern by plaintiffs' counsel that's not there. And the reason I initially had this going to just the plaintiffs' attorneys and back to our office was so that you would provide this information to us and not feel like you were speaking -- like it was a bigger audience. It's purely for data-gathering purposes, was the only reason.

But does anybody have any concern if you fill this out with it being shared? It's going to end up in

your amended complaint -- or it should end up in your amended complaint once you do that as far as what you're -- I mean, because, again, like I said at the beginning of the hearing, the complaints across these hundred-plus cases, as I'm sure the AG's office would agree with me on this, some of them are very detailed, and some of them are very general. Some of these started as pro se cases and now have counsel involved, and those are -- some of those are very bare bones. So fleshing this out is the goal so that we can identify all this.

Anybody on this side of the room have any concern with sharing the responses with opposing counsel? And maybe I anticipated something that's not a problem.

MR. ADAMS: Your Honor, Justin Adams, Nashville Bar. My concern would be that if these are publicly filed -- if they're somehow public, that then some argument of estoppel or waiver or something can be made down the line. And I realize that filing an amended complaint would probably eliminate that, but you always worry in law when you stake out a position publicly in a judicial filing that someone's going to come along and say, "Sorry, you can't change your position," or use it against you in some way.

THE COURT: Right.

MR. ADAMS: That's the -- that's the problem

that comes to my mind.

THE COURT: And that was part of my thinking in having these just come to me. But does anybody else have any heartburn with the AG's office getting copies of these?

MR. MOTHERSHEAD: The same sentiment and just any kind of potential for, you know, if there's just some clerical error, then, you know, the AG's are trying to impeach our clients with that at a deposition some day.

THE COURT: Right.

MR. MOTHERSHEAD: So, you know, in the spirit of this is informative, not binding, I don't -- I mean, candidly, I don't really see anything in here that shouldn't be shared. I mean, the AGs basically have access to this information anyway. Pseudonym cases have protective orders, so the names are protected anyway. But I just -- it just would need to be treated in that nonbinding informative kind of way.

THE COURT: Mr. Nisbet.

MR. NISBET: Virtually all this information is going to come off of the data I've got from the Sex Offender Registry.

THE COURT: Right.

MR. NISBET: And hopefully I've printed it off, and it's in my file. Gets a little hairy when you get to

No. 40. I think my answer to that one's going to be all of them for people convicted before 2004. I guess that's what you're asking for. You probably want a little more specific than that. But, as you say, that's going to -- it's either in my bare bones complaint -- I'll be the one to confess that mine's probably the barest of bones of all of them. We'll amend it to include those, but the rest of the information they've already got because they have access to the state files, the convictions, the TBI records and everything. So I don't have any problem with it at all.

THE COURT: Right. I mean, the more detail, both in the questionnaire and then ultimately the amended complaint, the better for our purposes. And also, in fairness, too, defendant's got to -- well, the AG's office has to defend all these cases. You know, I think just more is better in that sense.

You've raised a fair point. I'll think about what we're going to do on those. I think we can address the concerns raised by Mr. Adams and Mr. Mothershead in an order as to what this information is and what it can and can't be used for. And I don't think you're going to necessarily push back on that, at least I hope not. And it's not going to be part of the docket. This is not going to be part of a record on appeal. Again, I think

I've said about a hundred times now this is just information gathering and nothing more.

Pseudonyms are all over the map on these. Some are operating under pseudonyms, some are not, some have initials. Give me your best argument as to why we need to continue to use pseudonyms for people who are on a public registry?

MR. MOTHERSHEAD: It's the classification issue, Your Honor. It's a government branding, you know, with the violent label, the offender against children label. And the only way to challenge that branding is to sue. And then if you sue in your name, then that branding is in, you know, Pacer and Google and everywhere else forever. So that argument, you know, prevailed in the Eastern District a few months ago, with Judge Crenshaw a few months ago, and I think that's correct. I mean, it just -- we just can't let -- you know, the cat's out of the bag. You've been branded and, you know, shouldn't have to own your brand in order to challenge it.

THE COURT: I mean, I don't want to make their argument for them, but wouldn't that be true for the registry itself? I mean, it's out there. It's on the internet.

MR. MOTHERSHEAD: The difference is that the

Sixth Circuit says the registry itself is okay, but the branding is questionable. And Judge Trauger says it's not okay. So the classification is the problem.

THE COURT: Okay.

MR. BRANDON: Your Honor, I won't go long-winded because I know we've briefed this issue a number of times, and my arguments would just mirror the briefs there, but I think proceeding under pseudonyms was questionable in the prior state of the law before the first Does 1 through 9 appeal, and now that we have a public registry -- and I realize this probably is the next thing the Court is going to turn to -- we have preliminary injunctions that are still shielding many of these plaintiffs from actually being on that public-facing registry, but there's no basis in law for shielding those names from the public. That certainly undermines any interest in proceeding anonymously.

The default for proceedings in this Court is to proceed under your own name. I think that default applies with special force when you're seeking to enjoin and erase statutes enacted by the General Assembly, representatives of the people in the state that deal with public health, public safety. And the case law is developed. And I think we had that decision a year or two ago out of the Seventh Circuit that addressed this

particularly, that the precedent's in our favor. I think that's really one of the easy -- in terms of getting the cases in order and moving them along down the line, addressing the pseudonymity motions or oppositions that are pending in a lot of these cases could be one step that's easy to take while the Sixth Circuit decision is pending and while we work on amended complaints to sort of get one item on the docket out of the way.

THE COURT: Mr. Esquivel.

MR. ESQUIVEL: Yes, Your Honor, if I may. In terms of the pseudonym issue, Mr. Davis and I represent eight plaintiffs who filed under pseudonym. The motion to proceed under pseudonym is still pending, but that case has been filed as a class action lawsuit. And so if the Court is considering across-the-board decision, I think there may be unique circumstances for the scrutiny that a representative plaintiff may have in this process, and so would just ask the Court to allow us in that particular case to address what may be some unique issues of the scrutiny that a potential class representative has in one of these cases.

THE COURT: Okay.

MR. ESQUIVEL: Thank you.

THE COURT: All right. Thank you.

MR. BRANDON: If I could, Your Honor.

THE COURT: Go ahead.

MR. BRANDON: Just to respond to Mr. Esquivel. Nothing in my comments suggested that we're enticing the Court to make across-the-board determinations. We think the pseudonym issue has been briefed, such as in Mr. Esquivel's case and a lot of other pending cases. We'd ask for the opportunity to address, you know -- address it in particular cases where we need to, to the extent that the plaintiffs want to press unique circumstances in those cases. Happy to address that in individual motions without asking the Court to just blanket relief across the board.

THE COURT: Okay. Mr. Nisbet, do you have something to add?

MR. NISBET: I do. I have at least one client who was convicted in the '80s, I believe, and has been living under the radar of the SRO [sic] since then. No crimes, no nothing. Yes, he is on -- was on the forward-facing Sex Offender Registry page. There's a big difference between being on that list and having the local paper pick up your name as suing the TBI director and challenging your listing as a sex offender registry. You're forcing him to out himself in my opinion. And that's why all my protective orders have asked -- have sort of set out some case law that says the reason you do

that is you don't want to out these people. Yes, there is a forward-looking one, but he would have walked away. He would have said, "I'm not going to do it. I'm invisible as a sex offender right now. I'm doing" -- I mean, the Sex Offender Registry has accomplished its goal. Law-abiding and living the life he's supposed to and paying taxes. So to out him I think creates a tremendous burden on him.

THE COURT: All these issues are important. There's also a practical reason that it's on our radar, which is we've got a bunch of John Does, and to differentiate, we have to drill down to the case number. So one middle ground that we've thought of is perhaps be John Doe WLC, for example, John Doe and then the initials of the party.

Would that approach be -- and I'm not saying this puts to bed the pseudonym issue. I'm merely -- for contemplating amended complaints across the board, would that approach be a problem, or do we want to go to numbering these cases, and you're just stuck with being John Doe 47, or whatever the number is?

MR. NISBET: When I started doing these cases, Your Honor, I realized I needed some way to distinguish John Doe No. 1 in the first case I filed and John Doe No. 6 in the third case I filed. I like the -- and

that's why I started using initials. I like the idea of where you would use both the initials and the case number. The problem is, when I file the case, I don't have the case number.

THE COURT: Sure.

MR. NISBET: I do have the initials of the person, so I can put the initials. But the case number also then helps me immediately go, okay, I can now find that case. I don't have to rummage through my files to figure out what your initials -- where that file is.

THE COURT: All right. Well --

MR. MOTHERSHEAD: I mean --

THE COURT: Yes, sir.

MR. MOTHERSHEAD: -- you know, initials might be fine, but it's kind of off-the-cuff to just say, sure, go ahead. And numbers are just safer, you know, for our clients than initials, bottom line, even if initials -- maybe they are safe, but just a lot to commit to.

You know, the AGs, back in the day when these were just being unopposed, you know, they came up with the system of just using Doe and then the case number, and it was a very effective system, and I applaud them for it. I think we should just go back to that.

THE COURT: Yes, sir?

MR. WILSON: I have a suggestion, Your Honor.

What if, if we're doing it by numbers, we take a list of all of the plaintiffs from start to finish -- and like say, for example, my client, we have him down as Doe No. 1 in our case, but for all I know, we might -- I might be the 75th case that's been filed. So the Court could just reassign the number 75, and then the next time somebody files, give them 76 or 77 or something like that. And then you know just from looking at the number which person it is. You may not have to know what case it is, but at least you can distinguish this Doe from someone else because you're using a uniform -- your chronologing every John Doe plaintiff across the board in numerical order.

THE COURT: Just get at the end of the line if you're a new John Doe.

MR. WILSON: Uh-huh.

THE COURT: Okay. Remind me your name, sir.

MR. WILSON: Oh, Matthew Wilson.

THE COURT: Matthew Wilson. All right. Thank you.

MR. BRANDON: I think some of these concerns highlight why proceedings are normally done in open court without pseudonyms in front of the Court. Notwithstanding our objections to proceeding under a pseudonym, you know, if the Court is going to allow

pseudonymous filings for any period of time or a lengthy one, I don't think the AG's office has a particular, you know, preference on whether they're Doe 1332 or Doe WLC. The impacts on our client in terms of our ability to brief issues in front of the Court, what has to be filed under seal or -- under seal and our ability to investigate the claims brought by the plaintiffs, to search for nonparty discovery with the limits of a protective order that limit what we can communicate about the plaintiff to other people, all of those are still going to be the same, but I understand your Court understands those concerns and is just looking for management.

THE COURT: Right. I mean, I guess I haven't studied the protective orders that might have been entered in these various cases to see where you might bump up against some problems there.

Yes, sir?

MR. McKENZIE: Your Honor, may I? David McKenzie. If the State is going to continue to oppose the use of the pseudonyms, let me throw a wrench in the equation. I may be a very unique case that's sitting here today in that my client has actually been removed off the sex offender registration. He is no longer on a public record. We have already had his record completely

expunged. And so if there was a consideration that you're going to do away with the pseudonyms, and this man is going to have to file his pleadings in a federal court system, my goodness. I mean, that would just be a disaster for him.

THE COURT: Right. Okay. Thank you.

MR. McKENZIE: That's if the State is going to continue down that path.

THE COURT: Right.

MR. McKENZIE: There are exceptions.

MR. BRANDON: And just the same as with Mr. Esquivel's comment. I hope opposing counsel and the Court doesn't take my arguments today as an indication that the Court should just blanket decide these cases, whether it relates to pseudonyms or something else, all in one. I might not concede that Mr. McKenzie has a better argument for a pseudonym, but it would be appropriate to brief that in a particular case. We're happy to do that and not just have an on/off switch for everybody there.

THE COURT: Okay. So mapping this out, we've got a questionnaire for eight weeks, then we'll set a deadline for amended complaint filings. Again, the more detail, the better. In the past, there's been quite a number of -- a complaint has been met with a motion to

dismiss. So we need to -- not today, but we need to think about how that will be handled. If it's the same argument that you're presenting in just about every one of these, which I think there's been a lot of the same argument presented, we need to give some thought to how to approach that if the AG's intent is to file a motion under Rule 12. But, you know, ideally we'd like to get the issues joined and moving forward, which would then take us into case management.

Mr. Mothershead, you mentioned earlier some scope of discovery, some of which I heard you say was related a little bit more towards the injunction issues.

MR. MOTHERSHEAD: Right. You know, I think bottom line, Your Honor, the only reason we need that now is if we have to, you know, push to get these injunctions granted for the handful of cases that don't have them, in other words. You know, most cases have them and are stayed, or, you know, there's Does 1 through 8. There's just a small number, at least that I filed -- I think two that I filed, you know, more recently basically asking for sort of Trauger'esque versions of the injunction. And if that were just granted, there's really no reason to push discovery until after the Does 1 through 8 appeal. But if that's not just granted -- so far it hasn't been -- then it makes sense to take some discovery

around that issue and the classification issue.

THE COURT: Yeah. And I think we're all hoping that the case on appeal that Judge Trauger decided and is now in front of me -- if and when it comes back, is it going to provide incredible clarity, but it may not. It also is up on a -- at a procedural point that the Sixth Circuit, whatever panel we get, may decide to sidestep some issues because it was just on an injunction. Right? So we're just dealing with likelihood of success on the merits and not ultimately the merits of the claims.

Point is, we'll see what they say and when they say it. My best forecast is probably sometime in the fall. Anybody see it any differently? I think some briefs have been filed, but anybody think that fall is not about the right time frame we're going to see this? I think it's about right based on how they've been deciding them.

All right.

MR. BRANDON: If it's helpful, Your Honor, just on the motions to dismiss, I would anticipate that -- I think the similarity in motions to dismiss may be a product of similarity in the complaints and not necessarily a product of some, you know, repeat arguments in our office. If we're at a stage, either

post-Sixth Circuit decision or, you know, post-deliberation for plaintiffs' counsel where we have different complaints that look a little bit more diverse, the arguments in the motions to dismiss may also look a good bit more diverse when we have more information there. I know we're probably a little ahead of ourselves to get to that point, but in terms of forecasting what Your Honor might have to deal with with case management, I did want to make that note.

THE COURT: Okay. Well, I do my best to consider any motion filed and the responses and the replies. You know, statistically speaking, Rule 12(b) motions don't meet with a lot of success, but I know that if you want to file them, you're going to file them. And I'm not prejudging them. I'm just saying that's pretty much the way most of them go in most of the cases.

Last thing on my agenda that I would encourage, when we get to the amended complaint phase, is to give -- we've talked about this already some -- to give thought to the proper parties. You know, it's -- assuming for the sake of discussion only that some provision is found to be unconstitutional. It's going to have to be -- that order is going to have to be directed at somebody. And who is that somebody; right? Is it the TBI? Is it the local county? Is it -- it may depend. But it's not

going to just be out in the ether. It's going to have to direct somebody to not do something if the plaintiff wins on a particular claim. So I want to encourage both sides to be thinking about, very practically, what -- how does this play out if you win or if you lose. You know, I mean, if you don't win, it's kind of where you are. But, you know, if not, then who is the right party? Somebody has to be the right party.

And so, you know, maybe think about that practically, instead of swatting at every fly, would be my encouragement to you. Because all they can do is just sit and keep substituting until they land on the right one where you run out of arguments. Because, you know, the issue is not necessarily, ultimately, I think, whether Sheriff A or TBI or whomever is the right party, but more on the constitutionality of these issues which are being challenged, of course. That's why we're all here.

Anybody else have any thoughts while we're gathered? And then I've got one more thought for you.

MR. MOTHERSHEAD: Well, I feel like I probably kind of said this, but just so we're clear, like, for my two cases, and I think there are some other lawyers here that maybe have cases that don't have preliminary injunctions but have pending motions, like, we do want --

we do hope to have rulings on those without just kind of waiting on the Sixth Circuit in the Does 1 through 8.

THE COURT: Okay.

MR. MOTHERSHEAD: Right? And those motions are kind of, again, framed basically based on Judge Trauger's ruling, and Does 1 through 8, very similar at least. And so we would like to see rulings in those motions.

THE COURT: After Judge Trauger's order, have you-all talked to each other to see if you could reach some form of an agreed injunction? Might not be everything you want, Mr. Mothershead, but something you could live with? Because for a while these cases were -- injunctions were just entered because everybody agreed to do it.

MR. MOTHERSHEAD: Those were wonderful times.

THE COURT: Yeah.

MR. MOTHERSHEAD: We talked several times last summer after Judge Crenshaw ordered us to talk to each other, and no agreements were reached. But, yeah, I mean...

THE COURT: I would encourage you to have another conversation.

MR. MOTHERSHEAD: Well, I'll just say, I mean, you know, Mr. Krimm made clear to Judge Crenshaw at the time the State's not going to agree to anything. There's

no limited version of this that the State's going to agree to. So it was futile. It was determined to be futile in chambers, I mean. So we need the Court -- we're asking for the Court to rule.

THE COURT: I understand. And I hope that the AG's office will perhaps revisit that if that was, in fact, your position to see if maybe there's some middle ground that you can live with. I recognize that -- I understand completely why you wouldn't necessarily want to do that, but, you know, you've got a lot of lawyers here that are I'm sure busy with these cases and many others, that it may -- sort of not sacrificing the good for the perfect may be a good idea to have.

Yes, sir?

MR. WHITE: Your Honor, my case was administratively stayed before I could seek an injunction, and I haven't -- haven't filed for that because it was administratively stayed, and I was told not to, but I would obviously like to because, as one of these gentlemen said, my client's rights are likewise being violated, at least in my opinion, while he's under the guise of this registry. So I didn't want to essentially violate that order not to file anything, but at the same time I think with where we've gotten so far with different rulings, I think to some measure he's

entitled to a preliminary injunction, although not what was originally -- original meaning and agreed to.

So the question is can I -- can I file something to reopen it, maybe get an agreement with them if possible, but even if there is no agreement, not to trample on that order to not file anything?

THE COURT: Again, for the court reporter, your name, sir?

MR. WHITE: Brandon White.

THE COURT: Okay. Thank you.

I want you-all to have conversations about these things. Maybe we can get back to the good old days in some part of having some agreement on these things while the litigation proceeds and not -- we got a lot of work to do on these cases, we all do, and my hope is that people will stay focused on the main thing and not every little skirmish along the way.

The last thing on my mind is, if and when we get to the point of case management, I guess I could envision that there would be a pretty standard set and scope of discovery that could be taken. You know what you need to gather from them, and they know what they might need from you. I would encourage you-all to -- I mean, I know that the folks at the table here I think have the sort of critical mass of the cases, but enlist

the help of these others, too, to maybe if you could map out, you know, these are the interrogatories we want to ask, these are the documents we think we need. You don't have to ask for every document in the state of Tennessee in your discovery. Just, you know, hone in on that, and these are the -- if you're going to take a deposition, these are the topics we want to cover.

And maybe, I know this is going to be a crazy idea, but have a conversation with them about what would be the right scope of discovery in these cases so that we can try to get it moving. Because I can guarantee all those people back there don't want to sit and answer a hundred different sets of interrogatories and document requests when it's not really needed. I don't deal with this as much because the magistrate judges, unfortunately, have to deal with it way too often, but, you know, this sort of scorched-earth approach to written discovery we don't think we need here. I don't think we're going to need it. I hope not.

Yes, sir?

MR. MOTHERSHEAD: Your Honor, I just -- I hear the Court. I just want the Court to understand the context of this, which, you know, these motions to stay discovery started earlier this year because I served a request that had two interrogatories and eight RFPs in

connection with an injunction motion after our case management order ordered us to take discovery in conjunction with the injunction motion. I mean, that's just -- like, we're not -- we're not scorched earthing over here. It's just like I'm happy to talk to them about scope, but...

THE COURT: I'm not to the point of ordering it yet, but I could get there. I would encourage maybe these three groups, with seeking input from all these other folks and maybe even some folks who weren't here today, to gather your thoughts and pick a couple of folks and go over to their office and sit in a conference room, and you-all can gather however many you want, and sit and hash through some of this stuff.

As you-all I'm sure know, you know, my case management order in civil cases requires lead counsel to meet face to face before you can file a discovery motion. And the reason for that is a lot of times if you'll just sit down and talk to each other, you can resolve a lot of things. You might not resolve everything, but at least you can get it down to a manageable amount. So I would highly encourage you all -- we've got a lot of moving parts here, but once you start digesting some of this -- to set up a conference and go sit down and talk to them and start figuring out -- in the meantime, you-all can

think about which fights you want to pick and which ones you might not need to pick at this point, and then we can have some semblance of order going forward.

That's the whole purpose of this conference, the master case, is to try to get some semblance of order. I jumped on the grenade with my colleagues and took all these cases on, but now I'm trying to get them moved in a logical way. So I hope everybody will join me in that effort. That's my pep talk.

Yes, sir?

MR. GONZALEZ: Would it be possible for the Court to maybe file in the master case a list of all the case numbers that are part of the master case? Because if there's a hundred cases, I'm not even aware of a hundred cases, and I'd really like to, you know, read some of the other rulings and complaints and things like that in the other cases.

THE COURT: I can't think of a reason why not, but people a lot smarter than I am may have a decent reason. But if not, then I don't see a problem doing that, Mr. Gonzalez. But let me run that by, one, from a tech perspective, and two, from just thinking about it.

Do you see any reason?

MR. BRANDON: No problem on my end, Your Honor.

THE COURT: Okay. Well, at least he agrees on

that, so...

MR. BRANDON: I can do something for the Court.

THE COURT: Yes, sir?

MR. BRANDON: If I could, two issues to, I guess, add or supplement to Your Honor's agenda. One relates to the plaintiffs' counsels' request about preliminary injunctions. You know, I've heard a couple times today about plaintiffs' rights being violated on an ongoing basis. We're in the position of having a number of preliminary injunctions across a large swath of these cases that are entirely undercut by a decision of the Sixth Circuit two years ago that have yet to have been dissolved or modified or vacated and then a decision from the Sixth Circuit last year directing the Court to modify or dissolve those injunctions.

We have to insist that the Court address those. You know, the good old days about agreed injunctions also led us to I think where we are now in having this number of cases as cases were coming in daily. So I hope the Court can appreciate our hesitance to repeat that paradigm or have new cases filing every day. We certainly do want to work with plaintiffs' counsel on making this a manageable, you know, endeavor for the Court and for the parties, both as to discovery, as to new incoming injunctions, to open conversations about

that, but we think part of the equation also has to be to the cases where there's injunctive relief where folks at the Sixth Circuit has said ought to be registered and their names ought to be visible to the public so the public can be aware of the dangers they present to the community ought to be addressed at this point two years later.

The second issue that I don't think will have any pushback from the plaintiffs' counsel on because we've all agreed in the past is that the governor ought not be a defendant in any of these cases. He's been dropped from some. In some cases, those dismissals took effect before administrative closure orders. In a number of cases, the parties just weren't able to get to that point on the docket before things closed or an amended complaint was anticipated. Just on the administrative side and in terms of streamlining the litigation, it would be helpful to process the governor out of all of these cases as part of this process to try to line things up. And I think that should be simple because I don't think we've had any plaintiffs' counsel object or continue to seek relief from the governor after the first Does 1 through 9 decision.

THE COURT: And I think that should be able to be cleaned up pretty easily with the amended complaints

and my encouragement to think about the proper defendants. I realize, you know, there's a critical mass of who's been sued. There's a few folks on the edges, Tennessee Department of Correction and its Commissioner. In a few of those cases, I know Mr. Nisbet had one or two, where we've navigated through some issues that arose from having TDOC as a party. But I would encourage you-all, in addition to the governor, to, you know, think who do you really need to sue so that when we get to the amended complaint stage, we've got what you think are the right parties, we know what statutes are being attacked, and we can move this thing forward, instead of just kind of reaching and trying to figure it out ourselves. And there really shouldn't be any mystery. I mean, they should be fully aware of what you're attacking and who, so...

All right. Anybody else have anything else on your minds before we let everybody leave? No?

All right. Again, appreciate it. And my encouragement -- and you'll hear me say this again other times in these cases -- is just do your best to figure out ways to work together. If you need to, or if you think it might help, sit down with each other eyeball to eyeball, as Judge Higgins used to say, and, you know, get some movement going because we're going to have to move

the cases one way or the other.

Some of these issues we've left hanging, I'll let you know what I'm going to do on those, and then we'll go forward. Appreciate it. Everyone have a good rest of the afternoon.

(Proceedings concluded at 3:00 p.m.)

REPORTER'S CERTIFICATE PAGE

I, Patricia A. Jennings, Official Court Reporter for the United States District Court for the Middle District of Tennessee, in Nashville, do hereby certify:

That I reported on the stenotype shorthand machine the proceedings held in open court on April 14, 2026, in the matter of IN RE: TENNESSEE SEX OFFENDER REGISTRY, Case No. 3:26-cv-00300; that said proceedings were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate transcript of said proceedings.

This the 17th day of April, 2026.

/s/ Patricia A. Jennings
PATRICIA A. JENNINGS, RMR, CRR
Official Court Reporter